UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | MAGISTRATE NO. 24-13328 (LDW) |
| v. | AMENDED OPINION (REDACTED)[1] |
| DENNIS STOUT, | |
| Defendant. | |

Before the Court is the Government's application for the Court to recommend to the detention center in which Defendant is currently detained, via the United States Marshals Service, that Defendant not be permitted contact with ███████████████. (Govt. Ltrs. of Dec. 17 and 19, 2024). Defendant opposes the request. (Def. Ltr. of Dec. 18, 2024). For the reasons set forth below, the Court finds good cause for the issuance of such Order and shall issue an accompanying Order consistent with this Opinion.

Defendant was arrested on December 14, 2024 and charged with one count of Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). (ECF 1). In support of the sworn Complaint, an FBI Special Agent attests that an undercover law enforcement officer communicated with Defendant on a cloud-based messaging platform believed to be used by individuals producing and distributing child pornography. (*Id.*, Attachment B, ¶¶2-3). Defendant allegedly sent multiple images and videos of child pornography, including an image depicting a

---

[1] The Court sealed the original Opinion issued on December 23, 2024, subject to counsels' request for redactions to protect the identity of a minor who is alleged to be a crime victim. This Amended Opinion adopts counsels' proposed redactions, which redact information to protect the identity of the minor alleged victim.

young girl with her bare vagina exposed. The young girl is shown in the image laying opposite a man whose hand is close to the girl's vagina. The man in the image is believed to be the Defendant. (*Id.* ¶ 3).

Information provided by Pretrial Services indicates that the Defendant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Government represents in its letters to the Court that one of the pornographic images shared by Defendant is of ▮▮▮▮▮▮▮▮▮▮, and that he disseminated that image and others to an individual he met in an internet-based group ▮▮▮▮▮▮▮▮. (Dec. 17 Ltr. at 1-2). The Government further states that in the early morning after his arrest, Defendant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Govt. Dec. 19 Ltr. at 2).

Defendant's initial appearance on the Complaint was conducted by the undersigned on December 16, 2024. At that hearing, he consented to detention without bail. The Government, at the conclusion of the hearing, requested that the Court issue a no-contact Order preventing Defendant from contacting ▮▮▮▮▮▮▮▮, an alleged victim. The defense objected. The Court, stating that it was uncertain of its authority to issue such an Order restricting the actions of a detained defendant, reserved decision on the request until the Government provided legal authority to support its request.

In its letter submitted the next day, the Government no longer sought a no-contact Order directed to the Defendant but rather "that the Court recommend to the United States Marshals Service that no-contact provisions should be implemented to prevent [the] Defendant from interacting with ▮▮▮▮▮▮▮▮, who is both a victim and a potential witness in the instant case." (Govt. Dec. 17 Ltr. at 1). The Government maintains that such an Order is legally

2

appropriate under the Crime Victims' Rights Act, which confers on crime victims "[t]he right to be reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). It also contends that such an Order would be appropriate in order to prevent potential witness tampering. Further, it posits that such a recommendation would be consistent with Third Circuit law concerning no-contact Orders for incarcerated defendants.

In its letter objecting to the Government's request, defense counsel argues that the requested recommendation is inappropriate because it would not be easily enforceable and because the legal right to make such a recommendation at the pre-trial stage is unclear. The defense further points out that the Court is obligated to balance the Government's concerns with Defendant's First Amendment rights and his right to ███████████████████. (Def. Ltr. of Dec. 18, 2024 at 1-2).

The Court, having carefully considered counsels' arguments and having reviewed the relevant law pertaining to this issue, finds that it has authority to make the requested recommendation to the Marshals Service. It further finds that there is legal and factual support for making the recommendation in this case.

First, ███████████████ enjoys the protection of the Crime Victims' Rights Act to be "reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). There is good cause to believe that she may be a victim, as the Government has identified her image and the Defendant's image together in pornographic materials disseminated by Defendant online. Moreover, the protections of the Crime Victims' Rights Act attach at the pretrial stage, even before a defendant is adjudicated guilty of a crime against the alleged victim. *Does v. United States*, 817 F. Supp.2d 1337, 1340-41 (S.D. Fla. 2011).

Second, the Third Circuit's recent opinion in United States v. Santos-Diaz, 66 F.4th 435 (3d Cir. 2023) supports that the Court has the power to impose a no-contact order upon a detained pretrial defendant. Although the Third Circuit reversed the imposition of a no-contact order on a sentenced defendant who was in Bureau of Prisons' custody for reasons set forth in that opinion, it distinguished that situation from pretrial matters like the instant one. It noted that in the pretrial phase, the Court has inherent powers to issue no-contact orders between a defendant and a victim if such contact would "impede [the victim's] ability to testify in a future trial." Id. at 447. Given that this Court would thus have the authority to impose a no-contact Order directly on the Defendant, it certainly has the power, a fortiori, to recommend that the detention center prohibit such contact.

Third, there is adequate factual basis to conclude that the Defendant poses a risk of witness tampering in the absence of the requested no-contact recommendation. The alleged victim is a minor ▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. There is strong evidence in the form of the images themselves, which apparently display Defendant with ▮▮▮ whose genitals are exposed, of Defendant's power to coerce ▮▮▮ into a situation that most ▮▮▮ would find abhorrent. Moreover, Defendant's impulsivity that led him to ask to speak with ▮▮▮ at 2:30 a.m. the morning after his arrest demonstrates a propensity to contact ▮▮▮ at inappropriate times and under inappropriate circumstances. Given all this, it is no stretch of the imagination to view this power imbalance between Defendant and ▮▮▮ as rendering her highly susceptible to witness tampering.

Fourth, the Court has considered whether a more narrowly tailored Order, short of a complete no-contact Order, would adequately protect ▮▮▮ while respecting the

4

Defendant's First Amendment rights and ███████. The Court acknowledges that in cases where it sets bail conditions for a defendant whose ███████ are potential witnesses, co-conspirators or victims, it does not ordinarily prohibit all contact with those ███████ but rather prohibits discussion about matters at issue in the case. The Court sees such a narrowed provision as unworkable here, however, and not sufficiently protective of the victim. Given the extreme power imbalance between the Defendant and ███████, even contacts that are not about the case *per se* may still influence her psychologically not to testify truthfully about ███████ conduct. In addition, under the Crime Victims' Rights Act, the right of the ███████ to be "reasonably protected" from the accused would seem to leave little contact between the Defendant and ███████ that would adequately protect her psychologically. While the Court recognizes that there are ███████████████████████████████████████████████████████████████████████████████████████████████████. The Court therefore finds that a recommendation of no-contact between the Defendant and ███████ is the most narrowly tailored remedy to protect ███████ as a victim and preserve her integrity as a potential witness.

  <u>Finally</u>, to the extent that defense counsel contends that the Court's no-contact recommendation would be difficult for the detention center to enforce, the Court leaves that to the discretion of the Marshals Service and detention center. The Court is confident that the detention center is able to monitor Defendant's telephone calls and in-person visits effectively to prevent the Defendant's contact with ███████.

Dated: January 17, 2025        */s/ Leda Dunn Wettre*

                    Hon. Leda Dunn Wettre
                    United States Magistrate Judge